1

2

3

4

5

6               UNITED STATES DISTRICT COURT

7             SOUTHERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  JENNIFER J. HASSO aka JENNIFER J. | Case No.:  19-CV-368 TWR (DEB) |
| 10  HASSO-NAJM, individually and as | |
| Trustee of the NAJM FAMILY TRUST | **ORDER GRANTING IN PART AND** |
| 11  U/D/T 05/19/97, | **DENYING IN PART DEFENDANT** |
| | **METRO SAN DIEGO COMMUNITY** |
| 12                              Plaintiff, | **DEVELOPMENT CORPORATION'S** |
| | **SPECIAL MOTION TO STRIKE** |
| 13  v. | **(ANTI-SLAPP) AND MOTION FOR** |
| | **JUDGMENT ON THE PLEADINGS** |
| 14  CITY OF SAN DIEGO, a California | **RE: SECOND AMENDED** |
| municipal corporation; MAYOR KEVIN | **COMPLAINT FOR DECLARATORY** |
| 15  L. FAULCONER, an individual; JEN | **JUDGMENT, COMPENSATORY** |
| LEBRON, an individual; TODD | **AND PUNITIVE DAMAGES** |
| 16  GLORIA, an individual; YOVANNA | |
| LEWIS, an individual; MARY | (ECF No. 104) |
| 17  CARLSON, an individual; KTU&A, a | |
| 18  California corporation; KURT W. | |
| CARLSON, an individual; METRO SAN | |
| 19  DIEGO COMMUNITY | |
| 20  DEVELOPMENT CORPORATION, a | |
| California corporation; WILLIAM D. | |
| 21  NORDQUIST, an individual and as | |
| TRUSTEE OF THE WILLIAM D. | |
| 22  NORDQUIST FAMILY TRUST dated | |
| 23  May 14, 1993; EILEEN J. NORDQUIST, | |
| an individual and as TRUSTEE OF THE | |
| 24  WILLIAM D. NORDQUIST FAMILY | |
| 25  TRUST dated May 14, 1993; and DOES 1 | |
| through 100, inclusive, | |
| 26 | |
| 27                            Defendants. | |
| 28 | |

1    Presently before the Court is the Special Motion to Strike (Anti-SLAPP) and Motion

2    for Judgment on the Pleadings Re: Second Amended Complaint for Declaratory Judgment,

3    Compensatory and Punitive Damages ("Motion," ECF No. 104), filed by Defendant Metro

4    San Diego Community Development Corporation ("Metro).  Having carefully considered

5    the Parties' arguments and the law, the Court **GRANTS** the Motion to the extent it seeks

6    judgment on the pleadings and **DENIES** the Motion to the extent it seeks relief pursuant

7    to the California's anti-SLAPP statute.

## BACKGROUND[1]

9    Plaintiff initiated this lawsuit on February 22, 2019, filing a Complaint against the

10   City of San Diego ("City"), Metro, and eight other Defendants for thirteen causes of action

11   stemming from a property dispute concerning Olive Street Park and neighboring real

12   property owned by Plaintiff, i.e., the Emmet G. O'Neill Historic Property No. 311, located

13   at 2765 Second Avenue, San Diego, California 92103. (*See* ECF No. 1.)  On December 18,

14   2020, Plaintiff filed the operative Second Amended Complaint.  (*See* ECF No. 89.)

15   In her Second Amended Complaint, Plaintiff alleges that, in 1909, property owners

16   whose homes and stables faced two parcels of land that make up Olive Street and Maple

17   Canyon in San Diego's Bankers Hill neighborhood deeded a portion of the land to the City

18   to maintain as a neighborhood public park known as Olive Street Park.  (*Id.* ¶ 6.)

19   "However, as is confirmed in Court records, the City did not obtain title to the land because

20   the [1909] Indenture Deed neither gifted the land to the City nor constituted a purchase of

21   the land by the City." (*Id.*)  "[F]rom 1909 onwards and continuously for the last 111 years,

22   the original property owners and their successors openly and notoriously possessed and

23   used the land for their exclusive purposes." (*Id.* ¶ 7 (emphasis omitted).)  "For most of the

24   last 100 years, . . . the City has issued numerous building, structural and occupancy permits,

25   approving the construction of property that would otherwise be encroaching on to public

26

27

28   [1] As discussed below, for the purposes of the Motion, the Court accepts all factual allegations as true.  *See*
*Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).

19-CV-368 TWR (DEB)

1    land." (*Id*. ¶ 8.)  In 1991, the City designated a residence on this property—which was

2    later acquired by Plaintiff in 1998—as a historical landmark, "requiring Plaintiff to

3    maintain it in the exact same footprint as it was originally built." (*Id*. ¶¶ 8, 81.)

4        "Notwithstanding this history, the City has recently and suddenly claimed ownership

5    to Olive Street Park as a public park and engaged in a scheme to deprive Plaintiff from her

6    private use and enjoyment of her Historic Subject Property." (*Id*. ¶ 10.)  "[T]o clean their

7    muddied hands, the City and the Individual City Defendants have railroaded the

8    construction of an AIDS memorial Regional Park despite the fact that they do not own the

9    land and without regard to the vehement opposition from Plaintiff, citizens of the

10   neighborhood, the Banker's Hill Community Group, members of the LGBTQ+

11   community, and members of the historical preservation community." (*Id*. ¶ 11.)

12       The Second Amended Complaint contains the following allegations specific to

13   Defendant Metro.  Metro "is a California non-profit corporation" that "engaged in or

14   directed the acts complained from against [Plaintiff] and the Historic Subject Property

15   under color of City policy, custom, or pattern." (*Id*. ¶ 23.)  In August 2016, "Leo Wilson

16   at Defendant Metro responded to [a concern from an heir of a former property owner]

17   stating that 'the [AIDS] monument being contemplated will be small, and likely built upon

18   the section of land that the city purchased.'" (*Id*. ¶ 116.)  "This representation on Defendant

19   Metro's behalf was false and known to be false and only one of the many false

20   representations made by Metro relating to the new park." (*Id*.)  Metro "has also

21   misrepresented public support for the project in its attempts to approve the project." (*Id*.)

22   "At the time, the plans were not for a 'small' monument, but rather, for the AIDS memorial

23   to encompass more than 70% of the 0.6 acre parcel . . . ." (*Id*.)  "In a follow-up

24   communication with Defendant Gloria [a City Councilmember], Defendant Metro

25   demonstrated the Defendants' collective contempt for the 1909 Grantors, [the heir of a

26   former property owner], Plaintiff, the neighborhood, and the community, by stating,

27   '[W]hy your office continues to pander to a certain group of people puzzles me.'" (*Id*.

28   ¶ 117.)

19-CV-368 TWR (DEB)

The Second Amended Complaint alleges two causes of action pursuant to 42 U.S.C. § 1983 and 16 causes of action pursuant to California law, including claims for adverse possession, inverse condemnation, and quiet title. (*See generally* SAC.)  The sole cause of action brought against Metro is entitled "negligence/strict liability," but the allegations only reference negligence. (*See id.* ¶¶ 210–31.)  The negligence cause of action is brought against all Defendants and the allegations do not distinguish between the Defendants. (*See id.*)  Among other allegations, the negligence cause of action alleges that Defendants did the following: "failed to take action to protect Plaintiff's Historic Subject Property from erosion, such as failing to properly design and maintain drainage systems"; "failed to protect against surrounding properties or others dumping into Maple Canyon and allowed Maple Canyon to become a shelter for the homeless"; "have permitted Olive Street . . . to remain a blight on the neighborhood, allowing weeds to grow several feet high and failing to take any steps to maintain the land"; "negligently failed to disclose to Plaintiff issues relating to the Historic Subject Property's flooding, water damage and encroachment"; "negligently surveyed and improperly identified the Parcel of land deeded to the City in the 1909 Indenture Deed"; "negligently issued the 1924 construction and occupancy permits without verifying and identifying the boundaries of the parcel"; "negligently failed to identify and give notice of the now claimed encroachment"; "negligently and improperly closed of[f] Maple Street eliminat[ing] Plaintiff's access to her property"; "negligently and improperly misstated and misrepresented the scope, nature and impact of the Memorial Park Plan"; "negligently and improperly reported and misstated the public approval and the disapproval for the Regional Memorial Park"; "negligently designed the Regional Memorial Park"; "negligently and improperly conducted private meetings and took action in private that is subject to public review and scrutiny";  "negligently and improperly used their positions of authority to harm, scare, intimidate and silence Plaintiff"; and "negligently entered and trespassed onto Plaintiff's land without prior authorization, notice and/or consent from Plaintiff." (*Id.* ¶¶ 210–21, 224, 227.)  The negligence cause of action then alleges that "Defendants . . . owed Plaintiff a duty of care of that of a reasonably

1  prudent person, entity, professional or employer," and Defendants "breached their duties

2  of care," which "directly and proximately caused . . . Plaintiff damages."  (*Id*. ¶¶ 228–30.)

3        On February 16, 2021, Metro filed the Motion seeking to strike the allegations in the

4  Second Amended Complaint against Metro and for attorney's fees pursuant to California's

5  Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, and alternatively seeking judgment on

6  the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 104.)  On

7  July 14, 2021, Plaintiff filed an opposition to the Motion.  (ECF No. 124.)  On August 4,

8  2021, Metro filed a reply.  (ECF No. 127.)  On August 19, 2021, the Court conducted oral

9  argument on the Motion.  (ECF No. 131.)

## ANTI-SLAPP MOTION

### I.    Legal Standard

12       California law permits a defendant to move to strike a complaint arising from an act

13  "in furtherance of the person's right of petition or free speech under the United States or

14  California Constitution in connection with a public issue." *Vess v. Ciba-Geigy Corp. USA*,

15  317 F.3d 1097, 1109 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)).  This

16  motion is known as an "anti-SLAPP motion."  "SLAPP" is an acronym for "strategic

17  lawsuit against public participation." *See Hilton v. Hallmark Cards*, 599 F.3d 894, 899 n.1

18  (9th Cir. 2010).  "Anti-SLAPP statutes are designed to allow the early dismissal of

19  meritless lawsuits aimed at chilling expression through costly, time-consuming litigation."

20  *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (quotation omitted).  California's

21  anti-SLAPP statute provides that "[a] cause of action against a person arising from any act

22  of that person in furtherance of the person's right of petition or free speech under the United

23  States Constitution or the California Constitution in connection with a public issue shall be

24  subject to a special motion to strike, unless the court determines that the plaintiff has

25  established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ.

26  Proc. Code § 425.16(b)(1).  A defendant in federal court may bring an anti-SLAPP motion

27  seeking to strike California state law claims. *DC Comics v. Pac. Pictures Corp.*, 706 F.3d

28  1009, 1013 n.5 (9th Cir. 2013).

5

1   "The analysis of an anti-SLAPP motion proceeds in two steps." *Barry v. State Bar*

2   *of Cal.*, 2 Cal. 5th 318, 321 (2017) (quotation omitted).  At step one, "the court decides

3   whether the defendant has made a threshold showing that the challenged cause of action is

4   one arising from protected activity." *Id*. (quotation omitted).  Only if the Court determines

5   that relief is sought based on protected activity does it reach the second step. *See Baral v.*

6   *Schnitt*, 1 Cal. 5th 376, 396 (2016).  At step two, "the burden shifts to the plaintiff to

7   demonstrate that each challenged claim based on protected activity is legally sufficient and

8   factually substantiated." *Id*.  The Court "will review anti-SLAPP motions to strike under

9   different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am.,*

10  *Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  When, as here, "an anti-

11  SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court

12  should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether

13  a claim is properly stated."[2] *Id*. at 834.  If the claim is not adequately stated in the operative

14  complaint, the district court may defer consideration of the anti-SLAPP motion pending

15  the filing of an amended complaint.  *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377

16  F.3d 1081, 1091–92 (9th Cir. 2004).

17      If the plaintiff ultimately fails to meet its burden at the second step, the claim based

18  on protected activity is stricken and "[a]llegations of protected activity supporting the

19  stricken claim are eliminated from the complaint, unless they also support a distinct claim

20  on which the plaintiff has shown a probability of prevailing." *Baral*, 1 Cal. 5th at 396.  A

21  defendant who prevails on an anti-SLAPP motion can recover attorneys' fees and costs.

22  *See* Cal. Civ. Proc. Code § 425.16(c)(1).

23  / / /

24  / / /

25

26

27  [2] A court employs the Federal Rule of Civil Procedure 56 standard when an anti-SLAPP motion challenges the factual sufficiency of a claim. *See Planned Parenthood*, 890 F.3d at 834.  Here, it is undisputed that

28  Metro's anti-SLAPP motion challenges only the legal sufficiency of Plaintiff's claim and that the Rule 12(b)(6) standard applies.  (*See* ECF No. 104 at 11.)

19-CV-368 TWR (DEB)

## II.    Analysis

Metro contends that this "lawsuit seeks to impose liability against Metro . . . based upon protected conduct," "Plaintiff cannot show a probability of prevailing on the merits of the claim," and "[t]herefore, the Court should strike the state law[] claims as [to] Metro" and award Metro attorney's fees.  (ECF No. 104-1 at 2.)  Plaintiff contends that the Motion should be denied because "Metro fails to identify and analyze the operative Complaint"; the anti-SLAAP motion is untimely; "Metro fails to establish that the negligence claim arises from Metro's protected activity"; and "Plaintiff can prevail on the merits of her negligence claim against Metro."  (ECF No. 124 at 8, 9–11, 12, 14.)

Plaintiff's first contention—that "Metro fails to identify and analyze the operative Complaint"—is not persuasive.  In its brief, Metro recounts Plaintiff's shifting allegations with respect to Leo Wilson and Metro in the original Complaint and First Amended Complaint and Metro purports to incorporate the anti-SLAPP motion and motion for judgment on the pleadings filed by Leo Wilson when he was named as a Defendant in the original Complaint.  (*See* ECF No. 104 at 5–8, 12–13; *see also* ECF No. 1 ¶¶ 20, 93; ECF No. 61 ¶ 100–01.)  Metro's Motion, however, specifically refers to the allegations in Second Amended Complaint and clearly is directed towards the Second Amended Complaint.  (ECF No. 104 at 1, 6–8.)

As for the timeliness of the anti-SLAPP motion, California's anti-SLAPP statute contains a sixty-day deadline that has been applied in federal court when the motion attacks the legal sufficiency (rather than the factual sufficiency) of a claim.  *See* Cal. Civ. Proc. Code § 425.16(f); *see also Kendricks v. Collect Access, LLC*, No. 19CV1134-ODW, 2021 WL 256802, at *5 n.4 (C.D. Cal. Jan. 26, 2021) (stating that, although "the Ninth Circuit has held the sixty-day deadline of section 425.16(f) inapplicable in federal court when an anti-SLAPP motion is brought as a motion for summary judgment," "courts in this district have expressly declined to extend [this] rule to anti-SLAPP motions brought as motions to dismiss") (citing, *inter alia*, *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016)).  The California Supreme Court has interpreted the statute to "permit an anti-SLAPP motion

1    against an amended complaint if it could not have been brought earlier, but to prohibit

2    belated motions that could have been brought earlier (subject to the trial court's discretion

3    to permit a late motion)." *Newport Harbor Ventures, LLC v. Morris Cerullo World*

4    *Evangelism*, 4 Cal. 5th 637, 645 (2018).

5        Here, Leo Wilson's alleged statements were not attributed to Metro in the original

6    Complaint; instead, Wilson originally was alleged to represent the City.  (*See* ECF No. 1

7    ¶¶ 20, 93.)  The First Amended Complaint, filed on January 26, 2020, is the first pleading

8    that attributes Wilson's statements to Metro.  (*See* ECF No. 61 at ¶¶ 100–01.)   On

9    March 24, 2020, less than sixty days after the filing of the First Amended Complaint, Metro

10    and Plaintiff filed a joint motion (which was subsequently granted), agreeing to extend the

11    time for Metro "to file an anti-SLAPP as to the FAC." (ECF No. 70 at 5; *see also* ECF No.

12    71 at 3–4 (Order granting the joint motion).)  Prior to the agreed deadline to file an anti-

13    SLAPP motion as to the First Amended Complaint, Plaintiff moved for leave to file the

14    Second Amended Complaint, which was ultimately granted.  (ECF Nos. 78, 86.)  Metro

15    filed the Motion on February 16, 2021, within sixty days of the December 18, 2020 filing

16    date of the Second Amended Complaint.  (ECF Nos. 89, 104.)  Under these circumstances,

17    the Court finds Metro's anti-SLAPP motion to be timely.

18        Plaintiff's third contention—that "Metro fails to establish that the negligence claim

19    arises from Metro's protected activity" (ECF No. 124 at 12; *see also id*. at 12–14)—is more

20    persuasive.  At the first step of the anti-SLAPP inquiry, "a defendant must make an initial

21    prima facie showing that the plaintiff's suit arises from an act in furtherance of the

22    defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110 (quotation omitted).

23    "A claim arises from protected activity when that activity underlies or forms the basis for

24    the claim." *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1062 (2017) (citations

25    omitted).  "Critically, the defendant's act underlying the plaintiff's cause of action must

26    itself have been an act in furtherance of the right of petition or free speech.

27        In *Park,* the California Supreme Court distinguished between cases in which

28    protected activity "might supply evidence" of the claim and cases in which the "specific

1  elements of the . . . claims depended upon the defendant's protected activity." *Id*. at 1064.

2  Only in the latter cases is the "arising from" requirement satisfied. *See id*. The California

3  Supreme Court explained:

> [T]o read the 'arising from' requirement differently, as applying to speech leading to an action or evidencing an illicit motive, would, for a range of publicly beneficial claims, have significant impacts the Legislature likely never intended. Government decisions are frequently arrived at after discussion and a vote at a public meeting. Failing to distinguish between the challenged decisions and the speech that leads to them or thereafter expresses them would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power.

10  *Id*. at 1067 (quotations omitted).

11  The distinction made in *Park* is critical in this case. The sole claim against Metro is

12  negligence. The injuries claimed in the negligence cause of action were allegedly caused

13  by the property boundary dispute, the creation and design of the AIDS memorial, the

14  threats to Plaintiff and trespass on Plaintiff's property, and the maintenance and supervision

15  (or lack thereof) of Olive Street Park and the surrounding canyon and property. (*See* ECF

16  No. 89 ¶¶ 210–27.) While Wilson's two alleged statements attributed to Metro may

17  constitute evidence in support of the negligence claim, neither of the statements supply any

18  element of the negligence cause of action. *See Shahbazian v. City of Rancho Palos Verdes*,

19  17 Cal. App. 5th 823, 835 (2017) ("[T]he elements of the [plaintiffs]' causes of action—

20  negligence, inverse condemnation, and selective enforcement—do not require the

21  [plaintiffs] to prove the City made any statement or writing or otherwise took action to

22  further the City's exercise of its constitutional rights to free speech and to petition."); *see*

23  *also OneLegacy v. City of Monterey Park*, No. 19CV4911-ABJ, 2019 WL 6729723, at *3

24  (C.D. Cal. Aug. 21, 2019) ("[T]he elements of Plaintiff's [negligence] claim are based on

25  Defendants' underlying conduct. As such, the anti-SLAPP analysis against Plaintiff's

26  negligence claim does not proceed to step two."). Accordingly, Metro has failed to satisfy

27  its burden at step one of the anti-SLAPP inquiry of "showing that the challenged cause of

28  action is one arising from protected activity." *Barry*, 2 Cal. 5th at 321.

19-CV-368 TWR (DEB)

1    Although the Court has found that Metro failed to satisfy the first step of the anti-
2  SLAPP inquiry, the Court does not find that Metro's anti-SLAPP motion was frivolous or
3  solely intended to cause unnecessary delay.  Therefore, Plaintiff's request for attorney's
4  fees, (*see* ECF No. 124 at 16), is denied.  *Cf.* Cal. Civ. Proc. Code § 425.16(c)(1) ("If the
5  court finds that a special motion to strike is frivolous or is solely intended to cause
6  unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff
7  prevailing on the motion . . . .").  Accordingly, the Court **DENIES** the Motion to the extent
8  it seeks dismissal and attorney's fees pursuant to California's anti-SLAPP statute and
9  **DENIES** Plaintiff's request for attorney's fees.

10                         **MOTION FOR JUDGMENT ON THE PLEADINGS**

11    In the Motion, Metro alternatively asserts a motion for judgment on the pleadings
12  pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 104 at 1, 6, 8–9, 14–15.)  In
13  her opposition, Plaintiff fails to address this alternative basis for the Motion.  (*See generally*
14  ECF No. 124.)  Despite Plaintiff's failure to address this basis for the Motion, the Court
15  will address the merits of Metro's Rule 12(c) arguments.  *Cf.* S.D. Cal. Civ. L.R. 7.1(c)(5)
16  (permitting the Court to summarily rule on an unopposed motion).

17    A party may file a motion for judgment on the pleadings after that party files an
18  answer.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule
19  12(c) is functionally identical to a Rule 12(b)(6) motion and "the same standard of review
20  applies to motions brought under either rule."  *Gregg v. Haw. Dep't of Pub. Safety*, 870
21  F.3d 883, 887 (9th Cir. 2017) (quotation omitted).  The Court must accept all factual
22  allegations as true, draw reasonable inferences in favor of the non-moving party, and decide
23  whether the allegations "plausibly suggest an entitlement to relief."  *Id.* (quoting *Ashcroft*
24  *v. Iqbal*, 556 U.S. 662, 681 (2009)).  Under this standard, "[a] pleading that offers 'labels
25  and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'
26  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual
27  enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
28  555 & 557 (2007)).  While a complaint need not contain detailed factual allegations, it

19-CV-368 TWR (DEB)

1    "must contain sufficient factual matter, accepted as true, to state a claim to relief that is

2    plausible on its face."  *Id*.  A claim is facially plausible when it "allows the court to draw

3    the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

4         As discussed above, the sole claim alleged against Metro is negligence.  The

5    elements of a negligence claim under California law are duty, breach, causation, and injury.

6    *See Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017).

7         Despite the Second Amended Complaint containing 77 pages of allegations, it

8    contains only three paragraphs of factual allegations related specifically to Metro.  (ECF

9    No. 89 ¶¶ 115–17.)  Metro is alleged to have made a false statement about the size and

10   likely location of the AIDS memorial to the heir of a former landowner and a statement

11   about "pander[ing] to a certain group of people" to a City Councilmember.  (*Id*.

12   ¶¶ 116–17.)  As discussed above, it is not apparent from the Second Amended Complaint

13   how Metro's two alleged statements render it liable for the injuries alleged in the

14   negligence cause of action, such as "failing to properly design and maintain drainage

15   systems," (*id*. ¶ 210); "fail[ing] to protect against surrounding properties or others dumping

16   into Maple Canyon and allow[ing] Maple Canyon to become a shelter for the homeless,"

17   (*id*. ¶ 211); "negligently survey[ing] and improperly identif[ying] the Parcel of land deeded

18   to the City in the 1909 Indenture Deed," (*id*. ¶ 214); "eliminat[ing] Plaintiff's access to her

19   property," (*id*. ¶ 217); and threatening and "us[ing] their positions of authority to harm,

20   scare, intimidate and silence." (*Id*. ¶¶ 223–24.)  The Second Amended Complaint contains

21   a conclusory recitation of the four elements of negligence—i.e., "Defendants . . . owed

22   Plaintiff a duty of care of that of a reasonably prudent person, entity, professional or

23   employer," and Defendants "breached their duties of care," which "directly and

24   proximately caused . . . Plaintiff damages." (*Id*. ¶¶ 228–30.)  These allegations, however,

25   are insufficient to state a plausible claim.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals

26   of the elements of a cause of action, supported by mere conclusory statements, do not

27   suffice."); *Mahoney v. Sessions*, 871 F.3d 873, 877 (9th Cir. 2017) ("Conclusory

28   allegations of law . . . are insufficient to defeat a motion to dismiss.").

1    The Second Amended Complaint also alleges that Metro "engaged in or directed the
2    acts complained from against [Plaintiff] and the Historic Subject Property under color of
3    City policy, custom, or pattern." (ECF No. 89 ¶ 23.) The allegation of a "City policy,
4    custom, or pattern" appears to be a reference to the legal standard for holding a municipality
5    liable pursuant to 42 U.S.C. § 1983. *See Dougherty v. City of Covina*, 654 F.3d 892, 900
6    (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983,
7    unless a policy, practice, or custom of the entity can be shown to be a moving force behind
8    a violation of constitutional rights." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,
9    694 (1978))). While it is possible for *Monell* liability to extend to a private entity such as
10   Metro, *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012), Metro is not
11   named as a Defendant in the Second Amended Complaint's § 1983 causes of action. (*See*
12   ECF No. 89 at 47–48.) In any event, the Second Amended Complaint fails to allege the
13   facts necessary to state such a claim against Metro. *See Tsao*, 698 F.3d at 1139–42
14   (discussing the standards for holding that a private entity acts under color of state law).

15        In short, the Second Amended Complaint contains insufficient factual allegations to
16   state a plausible claim against Metro. *See Iqbal*, 556 U.S. at 678. In Plaintiff's declaration
17   attached to the opposition to the Motion and at oral argument, Plaintiff made additional
18   factual assertions that were not included in the Second Amended Complaint. (*See, e.g.*,
19   ECF No. 124-1 ¶¶ 10–16.) However, "when the legal sufficiency of a complaint's
20   allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint."
21   *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted). Based
22   upon review of the Second Amended Complaint alone,[3] the Court **GRANTS** the Motion
23   to the extent it seeks judgment on the pleadings.

24        As for leave to Amend, Federal Rule of Civil Procedure 15 instructs courts to "freely
25   give leave when justice so requires" and that rule is "to be applied with extreme liberality."

26
27
_____
28   [3] The Court offers no view as to the legal sufficiency of the factual assertions made in Plaintiff's
     declaration and at oral argument.

1    *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  Nevertheless,

2    leave to amend need not be granted where the amendment: (1) prejudices the opposing

3    party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile.

4    *See Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  In

5    her opposition to the Motion, Plaintiff does not address Rule 15 or otherwise request leave

6    to amend.  If Plaintiff wishes to reassert her claim against Metro, Plaintiff may file a motion

7    for leave to amend, accompanied by a proposed third amended complaint addressing the

8    deficiencies identified in this Order.  Alternatively, Plaintiff may proceed on her claims

9    alleged in the Second Amended Complaint against the four remaining Defendants—

10   William D. Norquist, Eileen J. Norquist, Kevin L. Faulconer, and Todd Gloria.[4]

11                          **CONCLUSION**

12        For the reasons discussed above, the Court **GRANTS** the Motion to the extent it

13   seeks judgment on the pleadings and **DENIES** the Motion to the extent it seeks relief

14   pursuant to the California's anti-SLAPP statute.  (ECF No. 104.)  The Court **DENIES**

15   Metro's and Plaintiff's respective requests for attorney's fees.  The Court **DISMISSES**

16   **WITHOUT PREJUDICE** Plaintiff's claim against Metro in the SAC.  <u>No later than</u>

17   <u>twenty-one (21) days from the date this Order is filed</u>, Plaintiff **MAY FILE** a motion for

18   leave to amend, accompanied by a proposed third amended complaint.

19        **IT IS SO ORDERED.**

20

21   Dated:  September 16, 2021

22                                        _____

23                                Honorable Todd W. Robinson

                                 United States District Court

24

25

26

27   [4] The Court offers no view as to the legal sufficiency of the Second Amended Complaint's claims against the four remaining Defendants, although the Court notes that Plaintiff has been ordered to show cause why this action should not be dismissed as to Defendants Kevin L. Faulconer and Todd Gloria for failure

28   to effect service and for want of prosecution.  (*See* ECF No. 136.)